IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
Southern Division

| | | |
|---|---|---|
| KENNETH ROBINSON | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. TMD 12-1541M |
| | ) | |
| | ) | |
| CAROLYN COLVIN,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION GRANTING DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT

Kenneth Robinson ("Plaintiff" or "Claimant") brought this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act, 42 U.S.C.§§ 401-433, 1381-83(c). Before the Court are Plaintiff's Motion for Summary Judgment (Pl.'s Mot. Summ., ECF No. 19) and Defendant's Motion for Summary Judgment. (Def.'s Mot. Summ., ECF No. 20). No hearing is deemed necessary. Local Rule 105.6 (D. Md.). For the reasons presented below, Defendant's Motion for Summary Judgment is GRANTED.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as Defendant in this lawsuit.

## I. Procedural History

Plaintiff protectively filed his applications on August 28, 2008 alleging disability since May 30, 2008 (subsequently amended to January 1, 2009) due to nerve damage in his right hand/arm, carpel tunnel syndrome, a lower arm crushing incident, hypertension, a kidney condition, a liver condition and degenerative spine. R. at 35-36, 118-24, 127-30, 139, 145. His claims were denied initially and on reconsideration. R. at 54-55, 56-57, 58-62, 66-69. On October 1, 2010, a hearing was held before an administrative law judge ("ALJ") at which Plaintiff and a vocational expert ("VE") testified. R. at 27-53. Plaintiff was represented by counsel. In a decision October 28, 2010, the ALJ denied Plaintiff's request for benefits. R. at 14-22. The Appeals Council denied Plaintiff's request for review rendering the ALJ's decision the final decision subject to judicial review. R. at 1-3.

## II. ALJ's Decision

The ALJ evaluated Plaintiff's claims for DIB and SSI using the sequential processes set forth in 20 C.F.R. §§ 404.1520, 416.920. At the first step, the ALJ determined that Claimant had not engaged in substantial gainful activity since his amended onset date. At step two, the ALJ determined that Claimant suffered from the following severe impairments: status post right carpal tunnel release and degenerative joint disease. At step three, the ALJ found that his impairments did not meet or equal the Listings of Impairments set forth in 20 C.F.R. pt. 404, subpt, P, app. 1. The ALJ concluded at step four that Plaintiff is unable to perform his past relevant work. At step five, the ALJ concluded that, given his residual functional capacity

("RFC"), Claimant was capable of performing jobs that existed in significant numbers in the national economy. Accordingly, he concluded that Claimant was not disabled. R. at 14-22.

III. Standard of Review

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g)(1994 & Supp. V 1999); *Pass v. Chater*, 65 F.3d 1200, 1202 (4th Cir. 1995); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented. *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984). It is such evidence that a reasonable mind might accept to support a conclusion, and must be sufficient to justify a refusal to direct a verdict if the case were before a jury. *Hays*, 907 F.2d at 1456 (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence. *Id*.

IV. Discussion

Plaintiff argues that the ALJ (1) erred in his hypothetical to the VE; (2) failed in his evaluation of Claimant's mental impairment; and (3) failed in his consideration of Claimant's work record.

    A.    VE Hypothetical

The opinion of a vocational expert is not helpful if it is not delivered "in response to proper hypothetical questions which *fairly* set out all of [a] claimant's impairments." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989) (emphasis added). As the Fourth Circuit has held a hypothetical question is unimpeachable if it "adequately reflect[s]" a residual functional capacity for which the ALJ had sufficient evidence. *Johnson v. Barnhart,* 434 F.3d 650, 659 (4th Cir.2005).

Here, Plaintiff takes issue with ALJ's hypothetical to the extent it only requires the individual to "avoid constant reaching and constant fine and gross manipulation with the right upper extremity." R. at 50. He contends that the hypothetical should have gone much further restricting the individual to only one-handed jobs. He cites to a Case Development Sheet in which an unidentified SSA worker cited "one handed jobs" Claimant could perform. R. at 324. Based on this evidence, Plaintiff argues that the ALJ should have adopted this finding and included it in the hypothetical to the VE. The Court disagrees.

First, it is clear that the ALJ's hypothetical mirrors the ALJ's RFC which specifically states that Claimant must "avoid constant reaching and constant fine/gross manipulation with the right upper extremity." R. at 18. The Court finds that substantial evidence supports this RFC finding; and accordingly that the hypothetical was proper in this respect. The ALJ recognized that Claimant sustained a work related injury to his right hand in August, 2005 which was originally diagnosed as crush injury. R. at 16. Subsequently, he was rediagnosed with carpal tunnel syndrome for which he underwent a release operation on February 26, 2007. R. at 199. Over the course of the year following surgery, Claimant reported with complaints of

4

pain, numbness and sensitivity although he failed to take the prescribed medication, failed to follow up on the physical therapy recommendation and did not report, at times, for three or five months between visits. R. at 271-76. Once Claimant began to take the prescribed Neurontin and attended physical therapy, he felt better and was reported to be working. R. at 270. In April, 2008, he was reported to have full range of motion. *Id.* In June, 2008, while Plaintiff continued to experience some numbness, he continued to have good range of motion and satisfactory strength. R. at 269. At that time, Dr. Dorin noted a successful surgery, a decrease in symptoms and that he could go back to his regular work activity except to avoid freezing temperatures. R, at 269. Nowhere did Dr. Dorin suggest that Claimant be limited to one-handed work. *See also* R. at 345 (July, 2008 a medical examination revealing positive Tinel's and Phalen's tests but full range of motion and an x-ray of his right wrist which was within normal limits).

The ALJ noted that during a consultative examination conducted in November, 2008 by Dr. Sosanya, Claimant continued to complain of poor grip and tingling sensation which was worse in his three lateral fingertips.R. at 17, 305. However, Dr. Sosanya observed that Claimant's right hand grip was only "mildly reduced when compared to the left hand." R. at 307. He also reported that Claimant again had a full range of wrist motion and normal deep tendon flexes. *Id.* The ALJ further noted that Dr. Stern indicated Claimant could not use his right hand for simple grasping, pushing or fine manipulation and this did not prevent him from working. R. at 20, 319, 321.

The ALJ considered all of this evidence as well as Claimant's testimony. R. at 18-19

He afforded great weight to the opinion of Dr. Dorin who performed the carpal tunnel release surgery. In addition to the findings discussed above, Dr. Dorin also opined that Claimant could lift between 10 and 20 pounds and can work as long as he avoids tools such as a hammer. R. at 19, 335-36. The ALJ also noted that while Dr. Stern indicated that he could not use his right hand repetitively for simple grasping, pushing and fine manipulation, that this is consistent with the RFC. R. at 20, 319. To the extent there may be some evidence which would indicate Claimant might have more restriction than that found by the ALJ, it is not the job of the Court to reweigh the evidence and the Court finds that the evidence cited above and relied upon by the ALJ constitutes substantial evidence to support his hypothetical to the VE as well as his RFC limitation with respect to his right hand. *See Smith v. Commissioner of Social Sec,* Civil No. 4:09cv80, 2010 WL 1640271 at *3 (E.D. Va. April 22, 2010).[2]

---

[2] Plaintiff also contends that the ALJ erred in failing to ask the VE to provide DOT numbers for the occupations he listed. As this Court has previously stated, the regulations do not require the VE or the ALJ to provide DOT numbers. *See Knox v. Astrue*, Civil Action No. TMD 10–11252011 WL 5513206, at *4 (D. Md. November 10, 2010); *see also Rollins v. Astrue,* C.A. No. 8:08–2663–HMH–BHH, 2009 WL 5195287 at* 15 (D.S.C. Dec. 22, 2009) ("As to the plaintiff's suggestion that the ALJ erred in failing to provide specific DOT numbers for the jobs recommended, it is unpersuasive. The regulations do not indicate that the VE or the ALJ are required to provide DOT numbers, but rather that the ALJ may "take administrative notice of reliable job information" such as that information contained in the DOT); *Taylor v. Astrue,* 2009 WL 50156, at *12, n. 6 (E.D.N.C. January 07, 2009); *Compton v. Colvin*, No. 11 C 8305, 2013 WL 870606 (N.D. Ill. Mar. 7, 2013) ("even with the inconsistencies and the failure to provide the DOT codes, the ALJ was within his rights to rely on the VE's testimony because the Social Security regulations do not require the VE to rely on classifications in the DOT."); *Patterson v. Commissioner of Soc. Sec.,* No. 1:09–cv–413, 2010 WL 774678, *3 (W.D. Mich. Mar.1, 2010) ("The absence of specific DOT code numbers does not undermine the substantial evidence supporting the ALJ's decision."); *Williams v. Astrue,* No. 08–cv–13470, 2009 WL 2840497, *11 (E.D. Mich. July 28, 2009) (R & R *adopted by* 2009 WL 2840499 (Aug. 31, 2009)) (rejecting argument that the "ALJ should have required the VE to provide the DOT

B.     Mental Impairment

Plaintiff next argues the ALJ failed to follow the proper procedure in analyzing his mental impairment. In addition to the five-step analysis discussed above and outlined in 20 C.F.R. § 404.1520, the Commissioner has promulgated additional regulations governing evaluations of the severity of mental impairments. 20 C.F.R. § 404.1520a. These regulations require application of a "special technique" ("psychiatric review technique") at the second and third steps of the five-step framework, *Schmidt v. Astrue,* 496 F.3d 833, 844 n. 4 (7th Cir.2007), and at each level of administrative review. 20 C.F.R. § 404.1520a(a). This technique requires the reviewing authority to determine first whether the claimant has a "medically determinable mental impairment." § 404.1520a(b)(1). If the claimant is found to have such an impairment, the reviewing authority must "rate the degree of functional limitation resulting from the impairment(s) in accordance with paragraph (c)," § 404.1520a(b)(2), which specifies four broad functional areas: (1) activities of daily living; (2) social functioning; (3) concentration,

---

codes associated with each of the jobs she listed"); *Squires v. Astrue,* No. 07–5096, 2008 WL 1776941, *8 (W.D. Ark. Mar.24, 2008) (R & R) (rejecting argument that ALJ committed reversible error when relying on VE testimony when VE failed to assign DOT code to past relevant work). The Court also notes that counsel attended the administrative hearing and presumably had the opportunity to inquire of the VE as to specific DOT numbers, but declined to do so. *See Rollins,* 2009 WL 5195287 at * 15.

persistence, or pace; and (4) episodes of decompensation. § 404.1520a(c)(3). According to the regulations, if the degree of limitation in each of the first three areas is rated "mild" or better, and no episodes of decompensation are identified, then the reviewing authority generally will conclude that the claimant's mental impairment is not "severe" and will deny benefits. § 404.1520a(d)(1). If the claimant's mental impairment is severe, the reviewing authority will first compare the relevant medical findings and the functional limitation ratings to the criteria of listed mental disorders in order to determine whether the impairment meets or is equivalent in severity to any listed mental disorder. § 404.1520a(d)(2). If so, the claimant will be found to be disabled. If not, the reviewing authority will then assess the claimant's residual functional capacity. § 404.1520a(d)(3).

Contrary to Plaintiff's argument, the ALJ was not required to perform the psychiatric review technique. The ALJ is only required to evaluate impairments for which there is "ample evidence in the record to support a determination that the claimant's impairments meets or equals one of the listed impairments ." *Ketcher v. Apfel,* 68 F.Supp.2d 629, 645 (D.Md.1999) ( *citing Cook v. Heckler,* 783 F.2d 1168 (4th Cir.1986)) (internal quotations omitted); *see also Baker v. Chater,* 957 F.Supp. 75, 79 (D.Md.1996) ("The necessary implication of [20 C.F.R. § 404.1520a], of course, is that no PRTF is required if there is no evidence of mental impairment."). Moreover, a claimant's own statements will not suffice. *Byrd v. Apfel,* 168 F.3d 481, 1998 WL 911718, at *3 (4th Cir. Dec.31, 1998). Instead, a claimant must establish his mental impairments through medical evidence. *Id.*

The ALJ specifically found that the claimant's depression does not cause more than a

8

minimal limitation on Claimant's ability to perform basic mental work demands and is therefore non-severe. R. at 17. At the outset, the Court notes that Claimant did not allege depression or any other mental impairment as a basis for disability. R. at 139. In support of this finding, the ALJ noted that despite Claimant's testimony that he sees a psychiatrist every month and goes to therapy every week, Plaintiff did not formally request a psychological evaluation nor did he provide any documentation of psychiatric treatment despite the fact that the ALJ left the record open for fourteen days for such a submission R. at 17. Here, the only medical evidence in the record is an isolated reference in a disability report in which SSA personnel may have found Plaintiff deficient in understanding, coherency and concentrating R. at 146. The Court does not find this evidence sufficient to trigger the ALJ's duty to apply the psychiatric review technique. The record does not contain any treatment or other medical evidence of depression. While Dr. Dorin noted that he "believe[d] [Claimant] has been seeing Dr. Alan Brody for some psychiatric problems," R. at 337, as mentioned above, Plaintiff submitted no evidence of any psychiatric treatment. Plaintiff argues that the ALJ's RFC which included moderate limitations in concentration, persistence and pace is somehow inconsistent with his finding that his mental impairment is not severe. To the contrary, the ALJ was clear that in the interest of giving Claimant the benefit of the doubt, he included such limitations "*due to side effects of pain and medication . . .*" R. at 17 (emphasis added). This finding does not lend support to Plaintiff's argument that he had a mental impairment of sufficient severity to trigger evaluation under the "special technique" discussed above. Claimant has not meet his burden in establishing a mental impairment and the ALJ did not err in his evaluation.

### C. Claimant's Work Record

Finally, Plaintiff argues that the ALJ somehow erred by not considering his work record. The Court agrees with the Commissioner that the ALJ is not specifically required to comment on what may be a positive work record in his credibility analysis. *See Watson v. Astrue*, 2012 WL 4026041, at *9 *E.D.N.C. September 12, 2012). Moreover, Plaintiff does not assert and the Court is unaware of how the failure of the ALJ in this respect would somehow change the outcome. Accordingly, Plaintiff's argument is without merit.

### V. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment is GRANTED. A separate order shall issue.


Date: August 19, 2013 _____/s/_____
THOMAS M. DIGIROLAMO
United States Magistrate Judge